[No. 11879.    Department Two.    July 23, 1914.]

THE STATE OF WASHINGTON, *Respondent*, v. K. TAKEUCHI, *Appellant.*[1]

LIBEL AND SLANDER—CRIMINAL RESPONSIBILITY—INFORMATION—TRANSLATION OF PUBLICATION. An indictment or information for criminal libel published in a foreign language must set out the defamatory words verbatim and follow them with a proper translation; but it is not essential that the words shall be identical in translations made by different persons, but is sufficient if there is no difference in the ideas conveyed.

SAME—OFFENSES—WORDS LIBELOUS PER SE. A published statement that the prosecuting witness visited the defendant's printing office and threatened to kill him, that he had been unduly intimate with defendant's wife, and had maintained improper relations with the wife of a man whose name was not disclosed, is libelous *per se.*

SAME—EVIDENCE—INJURY. In a prosecution for the publication in the Japanese language of an article libelous *per se*, where the prosecuting witness testified that his business credit was injured by reason of the loss of Japanese custom, evidence on the part of defendant showing such injury was occasioned by loss of credit with American dealers is inadmissible, when it was not shown that such dealers could have read the article in the Japanese language.

Appeal from a judgment of the superior court for King county, Ronald, J., entered October 25, 1913, upon a trial and conviction of criminal libel. Affirmed.

*P. V. Davis*, for appellant.

*John F. Murphy* and *Edgar J. Wright*, for respondent.

MOUNT, J.—The appellant in this case was convicted upon a charge of criminal libel. He was fined $150 and costs. He has appealed from that judgment.

[1]Reported in 141 Pac. 1145.

The appellant is a Japanese. He was the publisher in the city of Seattle of a paper called the "Great Northern Daily News." This paper was published in the Japanese language, in Japanese characters. The prosecuting witness is also a Japanese. To the information filed by the prosecuting attorney is attached a copy of the newspaper containing the libelous article, and also a translation of the article into English. The alleged libelous article, as translated by one Nakai, a Japanese, is as follows.

"Particulars Leading to Mr. Tanabe's Domestic Disorder.
"Scoundrel Yamakita's Violence
"His Improper Relations with Kimi Tanabe.

"Hyotaro Yamakita, who on ordinary occasions is a wolf in sheep's skin and modifies his true manners whenever he goes to a respectable family, at last betrayed his true character in connection with the present case. Seeing himself daily reported in this paper and unmindful of his own fault, Yamakita accuses and puts all the blame on Tanabe as the designer.

"Yamakita, greatly enraged, frequently comes either to Tanabe's printing office or to his room at the Togo Hotel and threatens to kill or shoot him dead with a pistol.

"Mr. Tanabe, who is an affable and upright man, became very much alarmed and through Mr. Setsuda appealed to the Japanese Association to protect his life and property. Hearing life and property in danger, Secretary Nakashima of the Association according to the need of the case, went at once to the police station, reported the circumstances and secured a policeman to watch and protect Mr. Tanabe.

"Last Sunday there was a funeral ceremony at the Woman's Home. Among those assembled was found a white, round faced beauty and directly next her was a big and fat man, measuring five feet four inches in height, and one hundred and seventy pounds in weight, and again, beside him was a young man appearing like a University student. The woman was Kimi and the men were Yamakita and Nakai. They, forgetful of their degraded selves, came out to a public meeting openly and impudently. That 'Love is blind' might be said of such audacity and indecency as theirs.

"This man Yamakita must have left a wife in Japan, but a year or two ago he had an adulterous relation with the

wife of a man whose name we do not disclose. Both Mr. Kumai and Mr. Hoshide are prominent Christians. It might be that Yamakita, believing in the Principle that God is love, had a desire to secure a baptism of love; but, perhaps he was weak in his faith, for he could not accomplish his end. Then he changed Christianity for Buddhism and clung to the mercy of Buddha. There in the Buddhist prayer-book it is written that if a good man wants a woman he must pray to the goddess of mercy with his whole heart and then he shall have the most beautiful woman. It means, therefore, that Yamakita went to the protected isle for beautiful women in Buddhism and was given its queen."

A demurrer to the information was overruled. When the case came on for trial, the Japanese who made the translation was not present as a witness. Another Japanese was called and testified that the translation attached to the information was substantially correct. He testified that there were words in the translation which he would change. A motion for a directed verdict was thereupon denied.

Witnesses upon the part of the defense testified that the translation was not correct. One of the translators for the defense translated the headlines as follows:

"Particulars Concerning Mr. Tanabe's Domestic Troubles. Scoundrel Yamakita's Violence. Strange Relation with Kimi Tanabe. Misconduct of Gentoku Nakai."

They also made some verbal changes in the words used.

The appellant now insists that the court erred in overruling the demurrer and in refusing to dismiss the case. As we read the original translation, and the translation contended for by the appellant to be a correct translation, we are satisfied that there is no difference in the ideas conveyed. The translations of both the witnesses for the state and the witness for the appellant are identical in so far as the ideas conveyed are concerned. The difference in translation is a mere difference in words, which, taken in connection with the whole article, mean the same things.

The appellant argues and cites authorities to the effect that the indictment must set out the defamatory words verbatim, and that the foreign language must be followed by a proper translation: Citing 25 Cyc. 578; 2 Bishop, Criminal Procedure 792; and 6 Am. & Eng. Ann. Cas. 732, and note. This is undoubtedly the rule. But by a proper translation, or a correct translation, is not meant that every word in the original must be susceptible of but one meaning in English and that meaning conveyed by a particular word. It was shown by the examination of the witness that the Japanese language is an idiomatic language; that these idioms may be expressed in different words having the same meaning in the English language. And this is the only objection that appears to be taken to the translation. For example, in the original article it was translated:

"Hoyotaro Yamakita, who on ordinary occasions is a wolf in sheep's skin and modifies his true manners whenever he goes to a respectable family, at last betrayed his true character in connection with the present case."

While one witness for the defense testified that the proper translation was as follows:

"The integrity of a pine tree can be proved by the coldness of the year, and when a man is poor he can know the bottom of his friend's heart. So, Hyotaro Yamakita, who, usually assumes an air of modesty and is diplomatic whenever he visits respectable family, at last betrayed his true character in connection with the present case."

It is true that the words of these translations are not identical. But it is apparent that the meaning is the same. The authorities above cited lay down the rule that the translation must be a proper and correct translation. But what is meant is that the idea must be correctly translated; it is not necessary that the words shall be identical in different translations. It is hardly possible to translate an article from one language into another, especially where both languages are idiomatic, without different translators using

different words to express the same idea. We are satisfied, therefore, that the translation was substantially correct, and that is all that was necessary. It is plain from either translation that the article was libelous *per se*. It accused Yamakita, the prosecuting witness, of frequently visiting Tanabe's printing office and threatening to kill him, which is a crime under the statute; it accused the prosecuting witness of undue intimacy with Kimi Tanabe, the wife of Mr. Tanabe; and it accused the prosecuting witness of improper relations with the wife of a man whose name was not disclosed. In these particulars, the published article was clearly libelous *per se*. The court did not err in refusing to dismiss the case.

Upon the trial of the case, the prosecuting witness testified that, after the publication of the article, his reputation was injured, and his business was destroyed through the loss of customers, so that he had to suspend; that he lost the esteem of his friends, etc. The witness explained that his credit was injured by reason of the loss of Japanese custom, which he had theretofore enjoyed. The defendant on cross-examination, attempted to show that the prosecuting witness had bought goods on consignment from American dealers, and that he had refused to pay therefor; and that this was the cause of his loss of business. Evidence was introduced along this line, and finally the court rejected further proof thereon. This is assigned as error. We are satisfied that the court committed no error in this respect, because it was not shown that Americans with whom the prosecuting witness did business had read, or could have read, the article. It is very apparent that the ordinary American, if he had seen the article, could not have read it.

In defense, there was an attempt to prove the truth of the article; but there was no attempt to prove the truth of the statement that the prosecuting witness had threatened to shoot Mr. Tanabe. An effort was made to show that the prosecuting witness assaulted Tanabe at one time with a hatchet. This evidence was stoutly denied on the part of

the prosecution.   There was also an effort to show that the prosecuting witness was unduly intimate with Kimi Tanabe, the wife of Mr. Tanabe.   This was stoutly denied by the prosecuting witness.   The jury evidently disbelieved the evidence of the appellant upon these questions.

Other points alleged as error are of no sufficient importance to justify consideration.   The article was clearly libelous, and published with malice and without justification.

The judgment is therefore affirmed.

CROW, C. J., FULLERTON, MORRIS, and PARKER, JJ., concur.